UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HALL, | 1:18-cv-01678-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL BE DENIED AND THIS CASE PROCEED WITH PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM AGAINST DEFENDANT FRESNO COUNTY, THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM (ECF No. 8.)** |
| vs. | |
| COUNTY OF FRESNO, et al., | |
| Defendants. | |
| | |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.      BACKGROUND**

Curtis Hall ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On December 11, 2018, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On January 13, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 7.)  On February 18, 2020, Plaintiff filed the First Amended Complaint which is now before the court for screening.  28 U.S.C. § 1915.  (ECF No. 8.)

## II.     SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

In reviewing the *pro se* complaint, the court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S.

89, 94 (2007).   Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.   Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"   Id. (quoting Twombly, 550 U.S. at 557).   Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is a civil detainee presently detained as a Sexually Violent Predator ("SVP") pursuant to the Sexually Violent Predator Act, Welf. & Inst.Code, § 6600 et seq., at Coalinga State Hospital (CSH) in Coalinga, California, in the custody of California's Department of State Hospitals.[1]   The events at issue in the First Amended Complaint allegedly occurred while Plaintiff was detained as an SVP in the custody of the Fresno County Sheriff at the Fresno County Jail.   Plaintiff names as defendants Fresno County and Sheriff Margret [sic] Mimms (collectively, "Defendants").   Plaintiff sues defendant Fresno County in its official capacity, and defendant Mimms in her individual capacity, claiming that Defendants violated his Fourteenth Amendment rights.

Plaintiff's allegations follow:

Plaintiff was detained as a civil detainee at the Fresno County Jail ("Jail") under Welfare and Institutions Code §6600, beginning on July 24, 2018.   Jail staff housed Plaintiff with criminal detainees in a section known as Protective Custody ("PC").   According to Cal. Pen. Code § 4002, Plaintiff could only be housed with criminal detainees if he signed a waiver in front of a Judge. This was never done.   Plaintiff told the booking deputies he was a civil detainee and could not

///

---

[1] A "sexually violent predator" is a "person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600.   Inmates held during the pendency of SVPA commitment proceedings are civil detainees.   King v. County of Los Angeles, 885 F.3d 548, 553 (9th Cir. 2018) (citing Jones v. Blanas, 393 F.3d 918, 922 (2004).

be housed with criminals.  He told three deputies and they all told Plaintiff to shut up, he was going to be housed wherever classification wanted to place him.

In the PC Unit there were criminal inmates who did not have sex offenses, so they did not have the same criminal history as Plaintiff.  Plaintiff continued to tell deputies he needed to be housed separately, but they all said that classification put him here so this is where he would stay.  Being housed with non-sex offenders put Plaintiff's life in danger of physical harm, and the entire time he was housed with criminal detainees he was in fear of physical harm.  Being an SVP placed Plaintiff's life at more risk than if he were only a sex offender.  Deputies would [front] Plaintiff off as a sexually violent predator in front of other inmates.  Plaintiff was in the same PC Unit for four and a half months.

Plaintiff was given the same amount of dayroom time, recreation time, phone time, shower time, visiting time, and other privileges as the criminal detainees.  Sometimes the non-sex offenders would bully the sex offenders to use the phone and showers and control the TV.  Deputies knew that the non-sex offenders pushed the sex offenders around and controlled the phone, showers, and TV which limited Plaintiff's privileges.  Some of the non-sex offenders would beat up the sex offenders.  Plaintiff got into an altercation with two other inmates.  It was a shoving match and the deputies came in and stopped it.  This was all because other prisoners knew Plaintiff was an SVP, because Plaintiff was fronted off [*sic*] by the deputies in front of some of them.  From then on Plaintiff was in real fear and had to watch his back closely.  Plaintiff was housed in PC from his arrival date of July 24, 2018, until he was transported to Coalinga State Hospital for treatment, and afterward when he returned to the Jail for trial.

Housing Plaintiff with criminal detainees violated state penal code §§4001 and 4002 because civil detainees are to be kept separately from other classes of inmates.  Therefore, the Jail's policy in housing SVP civil detainees was in violation of statutory law.  Deputies would tell the white shot caller [*sic*] of his housing unit who the sex offenders were, so the inmates could harass them and take their property more than from the other inmates in the unit.  It was clear that the deputies' practice was to treat Plaintiff and other SVP inmates worse than other

///

4

inmates.  So, by the practices of the deputies on all shifts, Plaintiff's conditions housed with criminal detainees were worse than theirs were.

Every time Plaintiff went to court the transportation officers treated him badly.  They would front him off [*sic*] to other inmates as being a child molester, a sexually violent predator, rapist, and a piece of sh\*\*.  By doing this they knew that Plaintiff would be yelled at on the bus and called names by other inmates on the bus.  This was a common practice.

According to Cal. Penal Code §4001, the jail is supposed to have a housing unit for each class of inmates.  Under Cal. Penal Code §4002, the jail can house Sexually Violent Predators in an administrative segregation setting as long as they do not lose any privileges, according to the Jones[2] standard.  Plaintiff received no additional privileges, or more considerate conditions than the criminal detainees.  This is in violation of the Jones standard.

All of the policies [at the Jail] for the treatment and conditions of SVP civil detainees are drafted to make their treatment and conditions equal to those of criminal detainees.  Therefore, the top policy maker, Sheriff Margret [*sic*] Mimms, can be found liable.  Sheriff Mimms is responsible for implementing policies that do not cause SVP civil detainees' rights to be violated.  This is a mandatory duty pursuant to Cal. Code Regs title 15 §1050-1080.  Because the conditions are in violation of rights according to Jones and King[3], and these conditions are practiced according to policy, Sheriff Mimms is liable for deficient policies.

Fresno County and the Sheriff have been sued by other SVP civil detainees in previous years according to a court search on conditions of confinement under Jones, so the county and sheriff are aware of the Jones standards, but they have not taken appropriate measures to follow them.  All of the policies about treatment or conditions of confinement are followed by the deputies working at the jail, so for three months Plaintiff suffered under the policies of the Sheriff's Department.  Policies alleged to be deficient are, and not limited to, housing of SVPs, recreation time, dayroom time, bedding, clothing, phone time, radios, tablets, shoes, visiting, and

---

[2] Jones v. Blanas, 393 F.3d 918 (2004).

[3] King v. County of Los Angeles, 885 F.3d 548 (9th Cir. 2018).

meals. All of the policies for SVPs are the same as those for criminal detainees, so Plaintiff's conditions of confinement were not more considerate, nor the same as those allowed in other counties or at Coalinga State Hospital.

The Sheriff's Department never housed Plaintiff in a unit where he was given more considerate treatment and privileges [than were given to other detainees]. There was no such policy in place. The custom and practice of the deputies in classification and housing was to just place Plaintiff with criminal detainees and if he survives, then he survives, and if not, then not. They took no measures to protect Plaintiff or keep him out of harm's way.

Defendants cannot show any legitimate reason why they do not have a special housing unit for SVPs, or have or enforce policies that make conditions of confinement more considerate and not identical to, or more restrictive than those for criminal detainees. At the time Plaintiff was at the Jail, Defendants were not meeting the Jones standards in housing SVPs.

Plaintiff has spoken to a few patients at Coalinga State Hospital who also had their SVP proceedings in Fresno County. They have recently gone back to the county jail for court proceedings. When they got there they found that classification now houses SVPs in a 12-man dorm by themselves to program all day and evening. They had extended dayroom time, phone time, and shower time away from criminals who put their lives at risk. Plaintiff asserts that the Defendants have made accommodations to properly house SVPs. This is the type of treatment Plaintiff should have received when he was in the Jail.

Plaintiff requests monetary damages, including damages for emotional and psychological suffering; and – as the court deems fit -- other damages, amendments, appointment of counsel, and injunctions.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

## A.    Civil Detainees

Plaintiff alleges that he was a civil detainee at the Fresno County Jail at the time of the events at issue in the First Amended Complaint. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than

criminals whose condition of confinement are designed to punish." <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982).  A civil detainee "is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime." <u>Jones</u>, 393 F.3d at 932.  Nevertheless, civilly committed persons can "be subjected to liberty restrictions 'reasonably related to legitimate government objectives and not tantamount to punishment.'" <u>Serna v. Goodno</u>, 567 F.3d 944, 949 (8th Cir. 2009) (quoting <u>Youngberg</u>, 457 U.S. at 320-21).

**B.     <u>Monell Liability – defendant Fresno County</u>**

Plaintiff sues defendant Fresno County in its official capacity.  "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . the real party in interest is the entity." <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiff must plausibly plead the following elements to proceed with his <u>Monell</u> claims against Fresno County: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." <u>Torres v. Saba</u>, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019).  Liability for deliberate indifference requires "more than ordinary lack of due care," in other words, Plaintiff must show more than negligence.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 128 L.Ed.2d 811 (1994).

Plaintiff correctly alleges that as a civil detainee he had a constitutional right not to be punished while housed at the Jail.  Under <u>Jones</u>, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." <u>Jones v. Blanas</u>, 393 F.3d

918, 931 (9th Cir. 2004) (quoting <u>Youngberg</u>, 457 U.S. at 321–22, 102 S.Ct. 2452.)  As civil detainees retain greater liberty protections than individuals detained under criminal process, <u>see</u> <u>Youngberg</u>, 457 U.S. at 321–24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, <u>see</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-36 (1979), it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.  <u>Jones</u>, 393 F.3d at 933.  Thus, Plaintiff has shown that he had constitutional rights as a civil detainee at the Jail.

Plaintiff alleges that he was not treated like a civil detainee at the Jail.  Upon his arrival he was housed with criminal detainees, and the privileges he was allowed -- such as dayroom time, recreation time, phone time, shower time, and visiting time -- were the same as those for criminal detainees.  Plaintiff alleges that being housed with non-sex offenders placed his life in danger, and he was in fear of physical harm.  Deputies told other inmates that Plaintiff was an SVP, which led to Plaintiff being involved in a shoving match with two other inmates.

<u>Jones</u> established two presumptions: First, conditions of confinement [for SPVs] are presumptively punitive if they are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Youngberg</u>, 457 U.S. at 321–22 (requiring civil detainees be given "more considerate treatment" than criminal detainees).  Second, conditions of confinement are presumptively punitive if "an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment." <u>Jones</u>, 393 F.3d at 933. If either presumption applies, the burden shifts to the defendant to show (1) "legitimate, non-punitive interests justifying the conditions of [the detainee's] confinement" and (2) "that the restrictions imposed . . . [are] not 'excessive' in relation to these interests." <u>Id.</u> at 935.  <u>King</u>, 885 F.3d at 557. These two presumptions are applicable to Plaintiff's claims that he was confined with conditions identical to those in which his criminal counterparts were held and more restrictive than those he would face at Coalinga State Prison following SVPA commitment.

///

There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted).

Plaintiff has not identified a specific *policy* that existed at the Jail or Fresno County allowing or directing deputies or other jail officials to punish civil detainees or SVPs, but Plaintiff's allegations imply that a *custom* of housing SVPs together with their criminal counterparts existed at the Jail. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>La v. San Mateo Cty. Transit Dist.</u>, No. 14-CV-01768-WHO, 2014 WL 4632224, at *8 (N.D. Cal. Sept. 16, 2014) (quoting <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996)). Here, Plaintiff alleges that he "suffered under the Jail's policies" for a sufficient duration. (First Amended Comp., ECF No. 8 at 8 ¶18.) Plaintiff also alleges that other SVPs were also subjected to the same unconstitutional behavior against them by deputies at the Jail.

Based on the foregoing, the court finds that Plaintiff states a cognizable <u>Monell</u> claim against Fresno County for adverse conditions of confinement.

**C.    Personal Capacity – defendant Mimms**

Plaintiff sues defendant Sheriff Margaret Mimms in her personal or individual capacity. Liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show that the defendant herself proximately caused deprivation of a federally protected right. <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988). "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat*

*superior* liability under [§] 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that a defendant sued in his or her individual capacity violated Plaintiff's constitutional rights through his or her own individual actions. <u>Iqbal</u>, 556 U.S. at 676; <u>Corales v. Bennett</u>, 567 F.3d 554, 570 (9th Cir. 2009).

A county official sued in his or her individual capacity may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>King v. County of Los Angeles</u>, 885 F.3d 548, 559 (9th Cir. 2018) (citing <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection [for liability in a defendant's individual capacity] can be established . . . by [the defendant] setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." <u>King</u>, 885 F.3d at 559 (citing <u>Starr</u>, 652 F.3d at 1207–08 (quoting <u>Dubner v. City & Cty. of S.F.</u>, 266 F.3d 959, 968 (9th Cir. 2001) (internal citation and quotation marks omitted)). "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 916 (9th Cir. 2012) (en banc).

To plead an individual capacity claim against a supervisor in a § 1983 case, a plaintiff must show (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001).

Here, no facts are alleged supporting a connection between any conduct by defendant Mimms and any alleged constitutional injury. As such, it cannot be concluded based on Plaintiff's allegations that defendant Mimms set in motion a series of acts that she knew or should have known would cause others to inflict a constitutional injury. <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991). Also, the record in this case does not establish that Sheriff

Mimms supervised the day-to-day operations of Fresno County Jail, that she was personally involved in any constitutional deprivation Plaintiff may have suffered, or the requisite causal connection for liability in her individual capacity.  Plaintiff alleges that defendant Mimms "is responsible for the deficient policies, customs and practices within the Sheriff's Department that cause constitutional violations," (ECF No. 1 at 3:20-22), and that Fresno County and the Sheriff "are aware of the standards" because they "have been sued by other SVP civil detainees in previous years," (ECF No. 1 at 7 ¶ 9).  These are conclusory allegations not sufficient to state a claim.  Plaintiff has not stated *facts* showing that defendant Mimms's personal involvement and personal conduct caused a violation of Plaintiff's rights.  Therefore, Plaintiff fails to state a claim against defendant Mimms.

**Final Policymaker**

As to whether defendant Mimms could be liable under a "final policymaker" theory, a plaintiff may allege a Monell claim by "establish[ing] that the individual who committed the constitutional violation was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official government policy."  Palm v. Los Angeles Dep't of Water & Power, 2015 WL 4065087, at *3 (C.D. Cal. July 2, 2015) (quoting Hopper v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001)).  However, "the fact that a city employee has a level of independent decision-making power does not render him a final policymaker for purposes of municipal liability."  Lopez v. City and Cty. of San Francisco, 2014 WL 2943417, at *14 (N.D. Cal. June 30, 2014).  "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of supervisors."  Zofragos v. City & Cty. of San Francisco, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006); see also Lopez, 2014 WL 2943417, at *14 ("For municipal liability to attach, 'the official who commits the alleged violation of the plaintiff's rights [must have] authority that is final in the special sense that there is no higher authority.'") (quoting Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F. 3d 464, 469 (7th Cir. 2001)).

///

Plaintiff has not alleged sufficient facts to state a claim against defendant Mimms under a "final policymaker" theory of <u>Monell</u> liability.  Plaintiff's First Amended Complaint makes only conclusory allegations that:

> "Sheriff Mimms is responsible for implementing policies that do not cause SVP civil detainees' rights to be violated.  This is a mandatory duty pursuant to Cal.Code Regs title 15 § 1050-1080.  Because the conditions are in violation of rights according to <u>Jones</u> and <u>King</u> and these conditions are practiced according to policy, Sheriff Mimms is liable for deficient policies."

(First Amended Comp., ECF No. 8 at 8 ¶ 16.)   As stated above, conclusory recitations of a <u>Monell</u> claim are not sufficient under <u>Iqbal</u> or <u>Twombly</u>.  <u>Ryan v. Santa Clara Valley Transportation Auth.</u>, No. 16-CV-04032-LHK, 2017 WL 1175596, at *9 (N.D. Cal. Mar. 30, 2017) (citing <u>La</u>, 2014 WL 4632224, at *7; <u>see also</u> <u>Yadin Co. v. City of Peoria</u>, 2008 WL 906730, at *5 (D. Ariz. Mar. 25, 2008) (dismissing <u>Monell</u> claim where the allegations were "simply conclusions for purposes of <u>Twombly</u> as there [were] no facts alleged showing that [Defendant] was in fact a final policymaker" for the county)).  Plaintiff's First Amended Complaint contains no factual allegations to show that defendant Mimms —who was the Sheriff of Fresno County -- was a final authority on matters of treatment of civil detainees at Fresno County Jail such that she was a "final policymaker" within the meaning of <u>Monell</u>.  <u>Ryan</u>, 2017 WL 1175596, at  10 (citing  <u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968, 985 (9th Cir. 2002); <u>see</u> <u>Neveu v. City of Fresno</u>, 392 F. Supp. 2d 1159, 1178 (E.D. Cal. July 15, 2005) ("Plaintiff's allegations of decision-making and policy-making authority are conclusory and insufficient.")).  Accordingly, Plaintiff has failed to plausibly allege a "final policymaker" theory of <u>Monell</u> liability.

### D.   Substantive Due Process – Fourteenth Amendment

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Bell</u>, 441 U.S. at 535. "[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even

when the decision to take that action is made through procedures that are in themselves constitutionally adequate." Halverson v. Skagit Cty., 42 F.3d 1257, 1261 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995) (quoting Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1407 (9th Cir. 1989)). In determining whether conditions of confinement of civilly committed individuals violate the constitution, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg, 457 U.S. at 321-22; Jones, 393 F.3d at 931-34. Civilly committed persons have a substantive due process right to be free from restrictions that amount to punishment. United States v. Salerno, 481 U.S. 739, 746–47, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Bell, 441 U.S. at 535.

The Fourteenth Amendment applies to conditions of confinement claims brought by individuals who have not been convicted of a crime. Jones, 393 F.3d at 931. Consequently, individuals detained on criminal charges may not be subjected to conditions that amount to punishment prior to an adjudication of guilt. Id. Further, individuals who are awaiting civil commitment proceedings are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime. Id. at 931–32. Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." Id. at 321.

The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). A civil detainee is entitled to more considerate treatment than criminally detained individuals, and when a civil detainee is confined in conditions identical to, similar to, or more restrictive than those applied to individuals detained under criminal codes, it is presumed that the detainee is being subjected to punishment. Jones, 393 F.3d at 932 (citing Sharp v. Weston, 233 F.3d 1166, 1172–73 (2000)).

14

Here, Plaintiff claims that the policies followed at the Fresno County Jail violated his Fourteenth Amendment rights. He asserts that the policies and customs applied to him, a civil detainee, were the same as those applied to individuals held pursuant to criminal codes, suggesting that he was being held in conditions designed to punish.

Therefore, the court finds that Plaintiff states a cognizable substantive due process claim against Fresno County.

### E.   <u>State Law Claims</u>

Plaintiff alleges violations by Defendants of California Penal Code §§ 4001, 4002 and 15 CCR §§1050-1080.  Plaintiff is advised that violation of state penal codes, regulations, rules and policies of the Department of State Hospitals, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  <u>See</u> <u>Galen v. Cnty. of Los Angeles</u>, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  <u>See Paul v. Davis</u>, 424 U.S. 693 (1976); <u>also</u> <u>see</u> <u>Buckley v. City of Redding</u>, 66 F.3d 188, 190 (9th Cir. 1995); <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  <u>See</u> 28 U.S.C. § 1367.

In this instance, the court has found cognizable § 1983 claims in the First Amended Complaint against defendant Fresno County for adverse conditions of confinement under the Fourteenth Amendment.  However, the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint.  <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty. (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995); <u>Karim-Panahi</u>, 839 F.2d at 627.  Plaintiff has not done so.  Therefore, his state law claims fail.

///

## F.   Relief Requested

Plaintiff requests as relief monetary damages, including damages for emotional and psychological suffering, and -- as deemed fit by the court – other damages, amendment, appointment of counsel, and injunctions to protect state and federal constitutional rights.

Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The physical injury "need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (back and leg pain and canker sore de minimis); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not de minimis).  The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.  Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress because he has not also shown a physical injury.

Plaintiff also requests injunctive relief pertaining to events occurring at the Fresno County Jail.  An inmate's release from [jail] while his claims are pending generally will moot any claims for injunctive relief relating to [the jail's] policies, Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001), unless there is a reasonable expectation that the injury will occur again, see Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam).  Here, Plaintiff was released from Fresno County Jail and is currently housed at Corcoran State Hospital, which ordinarily would cause his claims for injunctive relief to become moot.  However, Plaintiff's claims may not be moot as there is a reasonable chance that Plaintiff will be returned to the Jail for post commitment proceedings under §6605 or §6608 of California's Welfare & Institutions Code.[4]   Because of

---

[4] The Sexually Violent Predators Act specifies two different procedures, in sections 6605 and 6608, for determining whether the mental condition of a person committed as an SVP has improved sufficiently to

16

these variables, the court shall not decide this issue of whether Plaintiff is entitled to injunctive relief at this stage of the proceedings. Another issue affecting Plaintiff's claims for injunctive relief is whether Plaintiff would be subjected to the same injurious conditions as before if returned to the Jail. Plaintiff has alleged that he spoke to other SVP patients at Coalinga State Hospital who recently had court proceedings while housed at the Jail, and they told Plaintiff that conditions at the Jail have markedly improved since Plaintiff was there. Another consideration is whether Plaintiff's prospective relief is appropriate under the Prison Litigation Reform Act, which provides in relevant part, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Accordingly, in light of these pending issues, the court should not determine at this juncture whether Plaintiff is entitled to injunctive relief in this case.

### G.   Motion for Appointment of Counsel

Plaintiff's motion for appointment of counsel shall be denied. On January 13, 2020, the court denied Plaintiff's prior motion for appointment of counsel, without prejudice, (ECF No. 7 at 4-5), and there are no allegations that Plaintiff's circumstances to date have materially changed. Plaintiff was advised in the January 13, 2020 order:

> "Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal

---

entitle the person to either conditional release in a community-based facility or unconditional release. People v. Smith, 212 Cal. App. 4th 1394, 1399, 152 Cal. Rptr. 3d 142, 146 (2013)

issues involved." <u>Id.</u> (internal quotation marks and citations omitted). In the present case, the court does not find the required exceptional circumstances." At this early stage in the proceedings the court cannot make a determination that Plaintiff is likely to succeed on the merits. Plaintiff's Complaint is in the screening stage under 28 U.S.C. 1915.

The legal issues in this case -- whether Defendants violated Plaintiff's rights to appropriate conditions of confinement at the Fresno County Jail -- are not complex. Moreover, based on a review of the record in this case, the court finds that Plaintiff can adequately articulate his claims."

(ECF No. 7 at 4-5.)

Accordingly, Plaintiff's motion for appointment of counsel should be denied, without prejudice.

## V.    CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states a cognizable claim for adverse conditions of confinement under the Fourteenth Amendment against defendant Fresno County in the First Amended Complaint, but no other claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state any additional cognizable claims. "A district court may deny leave to amend when amendment would be futile." <u>Hartmann v. CDCR</u>, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); <u>Lopez</u>, 203 F.3d at 1127.

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's motion for appointment of counsel be DENIED, without prejudice;

2.    This case proceed against defendant Fresno County on Plaintiff's claim for adverse conditions of confinement under the Fourteenth Amendment;

///

3.    All other claims and defendants be dismissed, with prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted;

4.    Defendant Margaret Mimms and Plaintiff's claims against Mimms be dismissed, with prejudice, based on Plaintiff's failure to state any cognizable claims against her; and

5.    This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 29, 2020**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE